ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/2/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**TRUSTEES OF THE METAL TRADES BRANCH LOCAL 638 PENSION FUND, METAL TRADES BRANCH LOCAL 638 WELFARE FUND, AND SERVICE FITTERS' INDUSTRY EDUCATIONAL FUND, TRUSTEES OF THE STEAMFITTERS' INDUSTRY PENSION FUND, STEAMFITTERS' INDUSTRY SUPPLEMENTAL RETIREMENT FUND, STEAMFITTERS' INDUSTRY WELFARE FUND, STEAMFITTERS' INDUSTRY EDUCATIONAL FUND, STEAMFITTERS' INDUSTRY SECURITY BENEFIT FUND, AND STEAMFITTERS' INDUSTRY VACATION PLAN, and THE STEAMFITTING INDUSTRY LABOR MANAGEMENT COOPERATION COMMITTEE,**

Plaintiffs,

- against -

**HENICK-LANE, INC., HENICK-LANE SERVICE CORP., and VIVID MECHANICAL LLC,**

Defendants.

15 Civ. 1726 (LLS)

**OPINION & ORDER**

Defendants move to dismiss the first amended complaint ("FAC") for lack of subject-matter jurisdiction and failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part. There is subject-matter jurisdiction, but the FAC's second, fourth, sixth, eighth, and ninth claims are dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiffs are the trustees of two groups of multiemployer

labor-management trust funds: the Metal Trades local pension funds and the Service Fitters' Industry Educational Fund ("Metal Trades Funds"), and the Steamfitters' Industry Pension, Supplemental Retirement, Welfare, Educational, and Security Benefit Funds and Vacation Plan ("Construction Funds"). Plaintiff Steamfitting Industry Labor Management Cooperation Committee ("LMCC") is a joint committee established under the Labor-Management Relations Act.

Both groups of funds are affiliated with the non-party Enterprise Association of Steamfitters Local 638 ("Union"), and benefit the Union's metal trades branch and construction branch respectively.

Defendants Henick-Lane, Inc. ("HLI"), Henick-Lane Service Corp. ("HLSC"), and Vivid Mechanical LLC ("Vivid") are related companies owned and operated by non-party Ernist Henick.

Plaintiffs allege defendants violated collective bargaining agreements ("CBAs") with the Union by failing to make required contributions and refusing to permit an audit of their books.

## DISCUSSION

### Subject-Matter Jurisdiction

The FAC asserts federal-question subject-matter jurisdiction under section 301(a) of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), and section 502 of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1132.

Defendants argue that there is no subject-matter jurisdiction under ERISA or the LRMA because in fact they are not parties to collective bargaining agreements with the Union. That conflates the merits of plaintiffs' claims with the existence of jurisdiction.

There is a "very low threshold required to support federal-question jurisdiction." Gallego v. Northland Grp. Inc., 814 F.3d 123, 128 (2d Cir. 2016). "The jurisdictional inquiry is rather straightforward and depends entirely upon the allegations in the complaint." Carlson v. Principal Fin. Grp., 320 F.3d 301, 306 (2d Cir. 2003). "Under the longstanding well-pleaded complaint rule, however, a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" Vaden v. Discover Bank, 556 U.S. 49, 60, 129 S. Ct. 1262, 1272 (2009) (brackets in Vaden) (quoting Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S. Ct. 42, 43 (1908)).

Under section 301(a) of the LMRA, there is jurisdiction over "Suits for violation of contracts between an employer and a labor organization representing employees," and under ERISA section 515, there is jurisdiction over actions brought by ERISA fiduciaries alleging violation of an obligation to make contributions under the terms of an ERISA plan or CBA,

Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 568 (2d Cir. 1995).

The parties agree that the Metal Trades Funds and Construction Funds are ERISA fiduciaries. Plaintiffs allege, relying on several theories described in detail below, that defendants are bound by CBAs which they violated by refusing to grant plaintiffs access to their books and by failing to make contributions required by the CBAs and the funds' documents. Accordingly, there is jurisdiction under ERISA and the LMRA.

Defendants' arguments that the claims against them fail because they did not sign the CBA their agent produced for them must await proof: it does not arise on the face of the FAC.

The motion to dismiss the FAC for lack of subject-matter jurisdiction is denied.

**Failure to State a Claim**

1.

The FAC's first claim alleges that HLI breached its collective bargaining agreement with the Union's metal trades branch ("Metal Trades CBA") by refusing to allow the Metal Trades Funds to inspect its books and records.

Defendants argue that the complaint fails to allege that HLI is bound by the Metal Trades CBA.

According to the FAC, in March 2010, HLI's owner and CEO, Ernest Henick, signed a bargaining authorization appointing the

-4-

Mechanical Service Contractors Association of New York ("MSCANY") as its agent to execute a new CBA with the Union's metal trades branch. MSCANY then entered into CBA with the metal trade branch, binding HLI to its terms. The Metal Trades CBA authorizes the Metal Trade Funds to audit HLI to insure it has made all required contributions to the funds. The Metal Trade Funds have repeatedly requested access to HLI's books, but HLI has refused. That is sufficient to state a claim for breach of the Metal Trades CBA.

Defendants also argue that the FAC does not allege that the Union obtained majority support from HLI's employees and that, without majority support, it would have been illegal for HLI to enter into the CBA. Illegality is an affirmative defense. Fed. R. Civ. P. 8(c)(1). "The pleading requirements in the Federal Rules of Civil Procedure, however, do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007).

The motion to dismiss the first claim of the FAC for failure to state a claim upon which relief can be granted is denied.

2.

In the FAC's second claim, the Metal Trades Funds seek

delinquent contributions from HLI, stating: "HLI failed, or upon completion of an audit may be determined to have failed, to remit contributions it was required to make to the Metal Trades Funds for Service Work performed by employees of HLI from January 1, 2012 to date." FAC ¶ 30 (Dkt. No. 28).

There is no factual support for that conclusion. The FAC does not allege specific work performed by HLI for which contributions are owed or what the amount of delinquent contributions might be. There is no pleaded basis for plaintiffs' suspicion other than HLI's refusal to submit to an audit. Defendants' characterization is correct: "it is rank speculation--maybe money is owed, and maybe not." Defs.' Br. 11 (Dkt. 35). It presents no more "than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Accordingly, "it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966 (2007)).

The motion to dismiss the second claim for failure to state a claim is granted.

The same defect requires dismissal of the fourth, sixth, eighth, and ninth claims.

### 3.

In the FAC's third claim, the Metal Trades Funds seek

delinquent contributions from HLSC for work performed in 2012 and 2013.

Defendants argue that HLSC never signed the Metal Trades CBA. However, their Reply Brief at 27 (Dkt. No. 45) acknowledges that plaintiffs allege, based on a letter from defendants' attorney, that HLSC has been a signatory to the Metal Trades CBAs for the last 40 years: "Plaintiffs rely heavily on Ex. 4 to the FAC (Ex. E to the Markowski Aff.), which states (incorrectly) that HLSC is a signatory to the MTB CBA." Whether defendants' counsel was mistaken goes to the merits of the case, not whether plaintiffs' assertions state a claim.

Plaintiffs allege that HLSC made certain contributions to the Metal Trades Funds in accordance with the terms of the CBAs but that it is delinquent in the amount of $42,073.69 for 2012 and 2013. That total is broken down by union member, month, and category of fringe benefit in a spreadsheet attached to the FAC as exhibit 7.

That suffices to state a claim for delinquent contributions. The motion to dismiss the third claim is denied.

4.

In the fifth claim, the Metal Trades Funds seek to audit all defendants on the theory that they are alter-egos of each other.

"A district court's independent determination of alter ego

signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the CBA." Local Union No. 38, Sheet Metal v. Custom Air Sys., 357 F.3d 266, 268 (2d Cir. 2004). "The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws 'through a sham transaction or technical change in operations.'" UNITE HERE Nat. Ret. Fund v. Kombassan Holding, 629 F.3d 282, 288 (2d Cir. 2010) (quoting Newspaper Guild v. NLRB, 261 F.3d 291, 298 (2d Cir. 2001). "'[T]he test of alter ego status is flexible,' allowing courts to 'weigh the circumstances of the individual case,' while recognizing that the following factors are important: 'whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.'" Id. (brackets in UNITE HERE) (quoting Goodman Piping Prods., Inc. v. NLRB, 741 F.2d 10, 11 (2d Cir. 1984)).

The FAC alleges that Ernest Henick owned, managed, and operated HLI, HLSC, and Vivid and used them interchangeably when dealing with plaintiffs and third parties; that Mr. Henick bid on construction projects with HLI and performed the work with Vivid; that HLI, HLSC, and Vivid had the same address, telephone number, and attorney; that HLI's website described HLSC as an arm of HLI; that certain project managers were employed by both

-8-

HLI and Vivid; that HLI or HLSC vans appeared at Vivid jobsites; that HLSC's comptroller had access to Vivid's payroll records; and that Mr. Henick used the three defendants to avoid contributing to plaintiffs.

Defendants argue that the alter ego doctrine is inapplicable because each defendant has existed in parallel with the other defendants and no defendant is a continuation of another. Defendants also argue that the FAC alleges Mr. Henick's intent to evade labor obligations in a conclusory fashion, unsupported by factual allegations. However, the Second Circuit has held that neither parallel existence nor a lack of anti-union animus forecloses the finding that entities are alter egos:

> Although perhaps a "germane" or "sufficient basis for imposing alter ego status," an "anti-union animus or an intent to evade union obligations" is not a necessary factor. [Goodman Piping Prods., Inc., 741 F.2d] at 12 (internal quotation marks omitted). Accordingly, Kombassan's argument that it cannot be an alter ego because there were no facts establishing that the assignment was done with an anti-union animus or an intent to evade the obligations of the collective bargaining agreement is without merit.
> Furthermore, Kombassan's argument that alter ego status cannot apply where the entities exist simultaneously is also incorrect. "Although the alter ego doctrine is primarily applied in situations involving successor companies, where the successor is merely a disguised continuance of the old employer, it also applies to situations where the companies are parallel companies." Mass. Carpenters, 139 F.3d at 307 (internal quotation marks and citations omitted). Parallel existence, therefore, is not an impediment to imposing alter ego status.

UNITE HERE Nat. Ret. Fund, 629 F.3d at 288 (emphasis in

original).

The allegations of alter ego liability are sufficient to survive a motion to dismiss. See, e.g., Gesualdi v. Baywood Concrete Corp., No. 11-cv-4080(DRH)(AKT), 2014 WL 4659265, at *6 (E.D.N.Y. Sept. 17, 2014); Trs. of Hollow Metal Tr. Fund v. FHA Firedoor Corp., No. 12 Civ. 7069 (PAC), 2013 WL 1809673, at *4 (S.D.N.Y. Apr. 30, 2013).

As discussed above, plaintiffs have stated a claim that HLI and HLSC are bound by the Metal Trades CBAs. As alter egos, all defendant are bound by the CBAs' provisions granting the Metal Trades Funds access to their books. Plaintiffs allege they have demanded access to each defendants' books and have been denied, except by HLSC which provided incomplete access.

The FAC's fifth claim states a claim for violation of the Metal Trade CBAs by all defendants. The motion to dismiss it is denied.

5.

In the FAC's seventh claim, plaintiffs allege HLI and Vivid are liable as alter egos of HLSC for HLSC's $42,073.69 in delinquent contributions to the Metal Trades Funds in 2012 and 2013 that are the subject of claim three. As plaintiffs have stated a claim against HLSC for those delinquent contributions and that HLI and Vivid are alter egos of HLSC, the motion to dismiss this claim is denied.

6.

In the FAC's tenth claim, plaintiffs allege that, in January 2013, HLSC entered into a letter of compliance with the Union prescribing terms and conditions for HLSC to perform construction work on a certain project in Brooklyn, New York. The letter of compliance incorporated by reference the terms of a working agreement between the Union and the Mechanical Contractors Association of New York. Pursuant to the letter of compliance and the working agreement, HLSC was obligated to make hourly contributions to the Construction Funds and the LMCC for all construction work performed by its employees on the Brooklyn project. Plaintiffs allege that HLSC failed to make $18,914.90 in required contributions as calculated in exhibit 10 of the FAC, a spreadsheet which breaks down that total by union member, month, and category of fringe benefit.

That is sufficient to state a claim for delinquent contributions. Accordingly, the motion to dismiss the tenth claim is denied.

7.

In the FAC's eleventh and final claim, plaintiffs allege that, as alter egos of HLSC, HLI and Vivid are vicariously liable for HLSC's delinquent contributions to the Construction Funds and the LMCC.

Plaintiffs have stated a claim that HLSC failed to make

those contributions and that HLI and Vivid are alter egos of HLSC. Accordingly, plaintiffs motion to dismiss the eleventh claim for failure to state a claim is denied.

## CONCLUSION

Defendants' motion to dismiss the first amended complaint for lack of subject-matter jurisdiction and failure to state a claim (Dkt. No. 33) is granted in part and denied in part. The FAC's second, fourth, sixth, eighth, and ninth claims are dismissed for failure to state a claim. In all other respects, the motion is denied.

So ordered.

Dated:   New York, New York
         September 2, 2016

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.